CHEMICAL BANK & TRUST COMPANY, LAURETTE SCHINASI AND VICTORIA SCHINASI PINI (SOMETIMES REFERRED TO AS VICTORIA SCHINASI ROSS), AS EXECUTORS OF THE ESTATE OF MORRIS SCHINASI, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51690.   Promulgated April 14, 1932.

*Milton Winn, Esq.*, and *Fred L. Van Dolsen, Esq.*, for the petitioners.

*Lewis S. Pendleton, Esq.*, for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency in estate tax of $88,422.39. The only issue requiring our decision is whether the respondent erred in including in the gross estate of the decedent $390,000 representing the admitted value of a piece of real estate which the decedent had conveyed in trust during his lifetime. All other errors were waived, conceded, or stipulated. The respondent now concedes that the petitioners are entitled to an additional deduction of $4,400.41 paid by them to their attorneys.

The petitioners are the executors under the last will and testament of Morris Schinasi, who died on September 10, 1928, a resident of New York City. His will was duly probated in New York County. His net estate as returned and as determined by the Commissioner was in excess of $6,000,000.

On May 25, 1925, Morris Schinasi and his wife Laurette Schinasi, who at that time were living apart, entered into two agreements. By one of these the husband conveyed a property in New York City known as Blervie Hall to a bank upon the following trust:

The said trustee shall hold the above described property and collect the rents, dividends, income, interest and profits thereof, and after the payment of all taxes, repairs and expenses of any and all kinds, pay over the net income in

quarterly installments. to my wife LAURETTE SCHINASI, until she shall die, or until the trust shall terminate prior to her death as hereinafter provided, and upon her death or its prior determination, to pay, transfer, assign or convey the principal of said trust fund absolutely to me if then living, or if I shall not be then living, then to my, the Grantor's, children then surviving (the issue of my said wife Laurette Schinasi and myself) share and share alike, to each of such children, the issue then surviving of any deceased child of mine to take, per stirpes and not per capita, the share to which its parent would have been entitled if then surviving.

The trustee was given power to manage the property, but not the right to sell the property during the life of the grantor without his written consent. The agreement further provided that the trust should be terminated by the death or remarriage of Laurette Schinasi; by her divorce for adultery; upon written notice by the grantor and his wife to the trustee; and if the wife should violate any provisions of the second agreement referred to herein, especially if she should refuse, as in such indenture provided, to join for the purpose of releasing her dower in any conveyance of real estate which the grantor, his executors, administrators, heirs, or devisees might desire to sell, provided that a certain written notice be given the wife specifying the violation of which she had been guilty.

This agreement was made by the decedent more than three years prior to his death, and was not made in contemplation of death. The trust was actually set up pursuant to the terms of the instrument and remained in full force and effect up to the time of the decedent's death. The consideration mentioned in the above agreement was $1 and other valuable consideration, especially the consideration of the wife executing the second agreement, which was annexed to and made a part of the first. The second agreement was as follows:

KNOW ALL MEN BY THESE PRESENTS

WHEREAS, MORRIS SCHINASI, hereinafter sometimes referred to as "the husband," desires to make certain provisions for LAURETTE SCHINASI, his wife, hereinafter sometimes referred to as "the wife," during his lifetime, which said provisions are to be in the nature of a jointure upon the conditions and terms as hereinafter more specifically set forth; and

WHEREAS, the said provisions are embodied in a trust deed, made simultaneously herewith and annexed hereto and made part hereof, by which the said husband does convey to the Chemical National Bank of New York certain property upon the trust as in said trust deed more specifically set forth, and

WHEREAS, the wife in return is willing to permit the husband to sell any real estate in which she has an inchoate right to dower, free of such dower

NOW, THIS INDENTURE WITNESSETH:

FIRST: The trust deed hereto annexed is made part hereof as if herein specifically set forth.

SECOND: The wife agrees that during the lifetime of the husband, she shall not be entitled to demand or receive from him any money, support or alimony in addition to the income from the trust fund established by the trust deed

hereto annexed, whether living with the said husband or apart from him, and agrees not to apply in any action suit, or proceeding, in any jurisdiction, whether instituted by the husband or the wife for any alimony or support, it being agreed that the income from the said trust shall be in full for any alimony and support which might be awarded by any court. The wife further agrees, whether living with her husband or apart from him, to pay and discharge all her private debts and not to incur any debt or obligation upon the credit of her husband, either on her own account, or on account of any of the parties' children, and to keep the husband free and harmless and indemnify him from and against any and all debts and liabilities hereafter contracted or incurred by the wife.

THIRD: In case the husband desires to sell from time to time any one or more parcels of real estate owned by him at any time, in good faith, to any third person or persons, the wife shall join in the deed to such purchaser and release her dower right, it being understood that the husband shall be the sole judge of the adequacy and character of the consideration received therefor, of which consideration the husband shall notify the wife forthwith. For the purpose of computing any amount to which the wife shall be entitled pursuant to the fourth clause of this agreement, the net proceeds of any such sale (minus any amount which the husband may have to pay for income taxes on such sale) shall be considered as if they were real estate of which the husband had died seized bearing an income at the rate of four percent (4%) per annum.

FOURTH: If the wife survives the husband she shall receive during her life, as long as she remains unmarried, in addition to the income from the Trust Deed hereto annexed, such amount of annual income by which her annual dower right would exceed the income under such Trust Deed, and for such purposes the annual dower right shall be computed to consist of one third of the income in which the real estate of which the husband may die seized, and in which she would be entitled to dower, plus one-third ($\frac{1}{3}$) of the income from any property held subject to the Trust Deed hereto annexed. The wife expressly agrees that she will not claim any amount as dower, annual or otherwise, in excess of the provisions made in this paragraph.

FIFTH: The wife further agrees that after the death of her husband she will release her dower right in any real estate to enable the executors, administrators, heirs or devisees of the husband to sell the same. For the purpose of computing any amount to which the wife shall be entitled pursuant to the fourth clause of this agreement, the net proceeds of any such sale (minus any amount which may have to be paid for income taxes on such sale) shall be considered as if they continued to be real estate of which the husband had died seized, bearing an income at the rate of four percent (4%) per annum.

SIXTH: The wife covenants and agrees that she will execute and deliver, at the husband's expense, any and every instrument and document that in the judgment of the counsel for the husband, of his heirs, executors, administrators, devisees and assigns, shall or may be necessary to effect the purposes of this agreement.

SEVENTH: The wife hereby covenants and agrees that the trust deed hereto annexed is made in consideration of this indenture and upon condition that she perform all the agreements and clauses in this indenture contained.

EIGHTH: This indenture may be cancelled or amended at any time during the joint lives of the husband and the wife, by an instrument in writing executed by both of them.

NINTH: The amounts payable to the wife pursuant to the "Fourth" paragraph shall be paid to her annually by the legal representatives of the husband and/or the heirs, next of kin, devisees, legatees or parties in interest, as may be.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written, to wit: the 25 day of May, 1925.

MORRIS SCHINASI
LAURETTE SCHINASI

Laurette Schinasi was forty years old when the above agreements were entered into.

The Commissioner has included in the decedent's gross estate $390,000 representing the value at the date of the decedent's death of the Blervie Hall property. In justification of his action he points to the power which the decedent reserved to himself and his wife jointly to revoke the instrument of May 25, 1925. See section 302 (d) of the Revenue Act of 1926. He claims in the alternative that if the above is not a good ground, then at least the value of the remainder interest in this property should be included in the gross estate as representing transfers which took effect in possession or enjoyment at or after the decedent's death. The decision of this case, however, may not be limited to the question of whether or not the reasons advanced by the respondent are sound. If, for these reasons or for any other, all or any part of the value of this property should be included in the gross estate, we may not exclude it. Only in case there is no reason to justify inclusion could our judgment on this point be for the petitioners. The latter contend that the transfer in the instruments of May 25, 1925, was a *bona fide* sale for a full and adequate consideration in money or money's worth; that it was not a transfer intended to take effect in possession or enjoyment at or after death; that the grantor had no power to alter or revoke the trust, either alone or in conjunction with any person *not a beneficiary of the trust;* that, therefore, no part of the value of the Blervie Hall property may be included in the gross estate under section 302 (c) and (d) of the Revenue Act of 1926, citing *McCaughn* v. *Carver*, 19 Fed. (2d) 126; *Ferguson* v. *Dickson*, 300 Fed. 961; and *White* v. *Erskine*, 47 Fed. (2d) 1014.

The trust was for the purpose of paying income to the wife for life or until sooner terminated. It was not to continue after her death. Upon its termination the trustee was required to convey the remainder to the grantor, if living, or, if dead, to his children. The inclusion of this remainder in the decedent's gross estate need not depend upon section 302 (d). The transfer of the remainder to the children was one intended to take effect in possession or enjoyment at or after the grantor's death. It was contingent upon his dying before the trust terminated. It vested in the children at his death. His death was the indispensable and intended event which effected the transmission of the remainder from the dead (the husband) to the living (the children). The transfer of the remainder

was not a sale for a full and adequate consideration in money or money's worth. The grantor could not sell to himself, and there was no consideration in money or money's worth for the transfer to the children. It was proper for the Commissioner to include the value of this remainder in the decedent's gross estate under section 302 (c) of the Revenue Act of 1926. Cf. *Klein* v. *United States*, 283 U. S. 231. The value of the fee at the date of the decedent's death is conceded to be $390,000. The value of the remainder would be $390,000 minus the value, at the date of the decedent's death, of the wife's interest in the property.

There remains for our consideration the question of whether or not the value at the date of the decedent's death of the interest which the wife had in the trust property should be included in the value of the decedent's gross estate. The respondent concedes that the transfer in question was not made in contemplation of death. We agree with the petitioner that the transfer in trust for the benefit of the wife was not intended to take effect in possession or enjoyment at or after the decedent's death, for it took effect in possession or enjoyment immediately, as intended by the parties. Although the estranged husband and wife seem to have dealt at arm's length with a business regard for property values, each trying to exact from the other a fair price for their respective agreements and conveyances, nevertheless, we do not find it necessary to decide whether or not section 302(d) applies, nor to consider in this connection, the decision in *White* v. *Erskine, supra*. In any event, we would not know how much to deduct from the value of the fee as the value of the wife's interest at the date of her husband's death. This value has not been proven and there are no figures in the record to support this contention of the petitioners. The only evidence of value is the testimony of an attorney. He was asked, " Did you at my request compute the value of the life estate of Mrs. Laurette Schinasi at the age of forty-three years, her age at the death of her husband, in the sum of $390,000, being the agreed value for the purpose of this proceeding, of the corpus of the trust estate in question? " He answered that he had not made such a computation, but " I found the value of Mrs. Schinasi's life estate at the age of forty to be $267,272.30." The value of the interest of Mrs. Schinasi in the trust property when she was forty years of age may have been quite a different thing from a similar value at the date of her husband's death, when she was forty-three years of age. Furthermore, at the date of her husband's death she did not have an absolute life estate, as the witness seems to have assumed. Her interest, which might last for her life, was subject to be divested by the happening of certain events, namely, her remarriage or her refusal to join in deeds.

Being without proof of the value, at the time of the husband's death, of the wife's interest in the trust property, we would be unable to make a proper deduction from the $390,000. included by the Commissioner and would have to leave the parties as we found them. There is, however, a possible justification for including the full value of the Blervie Hall property in the decedent's estate. We suggest the question but do not decide it. Section 302(b) provides that there shall be included in the value of a decedent's gross estate, the value at the time of his death of all property wherever situated " to the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy." The instruments of May 25, 1925, provided a fund for the support of the wife so long as there was any obligation on the part of the husband to support her. The Commissioner is not including in the gross estate the amounts actually paid during the joint lives of the husband and wife for the support of the wife. The wife's interest in the Blervie Hall property, as it existed at the time of his death, was something acquired by her by contract in lieu of dower. Though contractual, was it testamentary in character and properly included in the gross estate under section 302(b)? Cf. *Lillian T. Latty, Executrix*, 23 B. T. A. 1249 .

*Judgment will be entered under Rule 50.*